UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DANIEL MARTIN PIRKEL,

       Petitioner,

                               Case No. 1:11-cv-205
v.                                  Hon. Robert J. Jonker

CARMEN PALMER,

       Respondent.

_____/

## ORDER TO STAY PROCEEDINGS

       Daniel Martin Pirkel, currently incarcerated at a Michigan correctional facility, has

filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.       Background

### A.       Petitioner's pleas entered on January 24, 2008

       Petitioner was charged in three cases pending in St. Joseph County Circuit Court,

identified as case nos. 14667, 14668 and 14669. Plea Trans. (docket no. 18). Petitioner was

represented by Attorney Kleidon in case nos. 14667 and 14668, and by Attorney Bush in case no.

14669. *See* State court docket sheets (docket nos. 15, 16 and 17).

       Case no. 14667 contained four counts of criminal misconduct that occurred on June

5, 2007: carrying a concealed weapon, M.C.L. § 750.227, a felony punishable by up to five years

in prison and/or a fine of up to $2,500.00; possession of a loaded firearm in a vehicle, M.C.L. §

750.227c, a high court misdemeanor punishable by up to two years in prison and/or a fine of up to

$2,500.00; third degree retail fraud, M.C.L. § 750.356d(4), a "93-day" misdemeanor with the

possibility of a fine of $500.00 or three times to value of the property stolen, obtained or attempted

to be obtained; and assault or assault and battery, M.C.L. § 750.81, also a 93-day misdemeanor with the possibility of a fine up to $500.00. Plea Trans. at p. 10; State court docket sheet (docket no. 15).

Case no. 14668 contained two counts of criminal misconduct that occurred on May 5, 2007: second degree criminal sexual conduct (CSC 2), M.C.L. § 750.520c(1)(a), a felony punishable by up to 15 years in prison; and accosting a child for immoral purposes, M.C.L. § 750.145a, a felony punishable by up to four years in prison and/or a fine of $4,000.00. Plea Trans. at pp. 10-11; State court docket sheet (docket no. 16).

Case no. 14669 contained eleven counts of criminal misconduct that occurred on June 16, 2007: assault with intent to murder a police officer (in this case a Michigan State Trooper), M.C.L. § 750.83, a felony punishable by life in prison or any number of years; assault with intent to murder Tom Hicks, M.C.L. § 750.83, a felony punishable by up to life or any number of years; assaulting, resisting, obstructing or causing serious impairment of a police officer, Todd Bohm, M.C.L. § 750.81d(3), a felony punishable by up to 15 years and/or a fine of $10,000.00; receiving and concealing stolen property over $1,000.00 but less than $20,000.00, M.C.L. § 750.535(3)(a), a felony punishable by up to five years and/or a fine of $10,000.00, or three times the value of the property, whichever is greater; assault with a dangerous weapon, felonious assault against Officer Todd Bohm, M.C.L. § 750.82, punishable by up to four years and/or $2,000.00; assault with a dangerous weapon, felonious assault against Officer Noel Jimenez, M.C.L. § 750.82, punishable by up to four years and/or $2,000.00; assault with a dangerous weapon and felonious assault on Officer Ken Cerny with the Michigan Department of Natural Resources (DNR), M.C.L. § 750.82, a felony punishable by up to four years; assault with a dangerous weapon on Deputy Chief Ives, M.C.L. §

750.82, a felony punishable by up to four years in prison and/or a find of up to $2,000.00; assaulting, resisting, obstructing, causing injury to Dave Ives, M.C.L. § 750.81d, a felony punishable by up to four years and/or a fine of $5,000.00; fleeing and eluding a police officer in the fourth degree, M.C.L. § 257.602a(2), a felony punishable by up to two years and/or a fine of $500.00; and felony firearm, M.C.L. § 750.227b, punishable by a mandatory two-year sentence consecutive to and preceding any other term of imprisonment imposed. Plea Trans. at pp. 9-12; State court docket sheet for case no. 14669 (docket no. 17).

At the commencement of the plea hearing, when the trial judge asked petitioner if he wished to enter a plea, petitioner responded:

> I understand it but I don't know, I'm just reading stuff right now for the first time I've ever read it – or known about it, but I – I feel like I'm getting my arm twisted.

Plea Trans. at p. 3. At that point, the trial judge stopped the proceedings and allowed petitioner to review the material with his attorney, which was identified as the police report of the incidents charged in case no. 14669. *Id.* at pp. 3-4.

The trial judge resumed the proceedings after allowing petitioner to spend about 1 1/2 hours speaking with his attorneys. *Id.* at p. 4. At that time, the trial judge explained a plea agreement which resolved all three cases. In case no. 14668, the two sexual offense charges were dismissed in exchange for a guilty plea on all counts in case no. 14667 and a no contest plea to all counts in case no. 14669. *Id.* at pp. 5-6. After further discussion on the record, petitioner stated that understood the terms of the plea agreement. *Id.* at p. 10.

Ultimately, petitioner pled no contest to all of the counts in case nos. 14667 and 14669, in exchange for the prosecutor's dismissal of the sex crimes charged case no. 14668. *Id.* at

pp. 14-16.  The trial judge examined petitioner to establish the the plea was voluntary and knowing.

Upon examination by the judge, the petitioner stated:  that he understood that the judge would treat

his no contest plea as if he had pled guilty or been found guilty by a jury or the judge; that he read

the rights forms in case nos. 14667 and 14669; and that he understood that by pleading no contest

he was giving up the rights he had at trial as set forth on those forms.  *Id.* at p. 17.  Upon further

questioning from the Court petitioner stated: that he was not presently on probation or parole; that

no one promised him anything to plead no contest other than what was said in court that day; that

no one had threatened him to plead no contest; that he was pleading no contest of his own free will;

and that he understood that once his no contest plea was accepted, he could not return at a later date

"and claim that there were no other promises or threats" that he failed to tell the judge at the plea

hearing or return and claim that it was not his "own free choice to plead no contest to these charges."

*Id.* at pp. 16-18.

The prosecutor then made the following offer of proof with respect to case no. 14667,

which involved events that occurred in the Meijer store and parking lot in Three Rivers, Michigan

on June 5, 2007:

> On the date in question, [petitioner] was seen acting suspiciously in the store.
> One of the things he did is walk up to a woman by the name of Diana Bunch, who
> worked at the store and asked him if she could help him.  They had a brief
> conversation; they were face to face.  He reached around behind her and grabbed one
> of her bucket – buttocks and squeezed.  That – and that's the basis for the assault and
> battery charge.

> Then the store personnel started watching him.  They saw him pull – pull the
> store alarm – fire alarm, and then walk out with other customers in the – in a crowd,
> and then alarm went off.  They later found that a pair of boots were stolen from the
> store that morning, and those boots were in fact work by [petitioner] when he was
> arrested in the parking lot that day.

When he was arrested, he was trying to gain entry into the car which was locked. Found in the car was a – a rifle, a forty caliber rifle, which by inference, he had to have had in the car when he drove to the store, supporting the carrying a concealed weapons charge.

When the weapon was inspected by Office Sangalli and Sergeant Smith, the – the rifle was found to be loaded with a – a ten round magazine, supporting possession of a loaded firearm in or upon a vehicle.

*Id.* at pp. 18-19.

In support of the no contest plea to case no. 14669, the trial judge reviewed a copy of the police report, which, according to the judge, included a factual basis for each of the counts. *Id.* at p. 20. The judge proposed just admitting the police report to establish the elements of the offenses. *Id.* The prosecutor observed that they had taken a break to allow petitioner to read the report himself. *Id.* Petitioner's counsel, Mr. Kleidon, had no objection to proceeding in this manner, which did not require testimony from the reporting officers. *Id.* During the course of this conversation, petitioner's other counsel, Mr. Bush, entered the courtroom. *Id.* at p. 21. After some discussion, the judge concluded that the police report was sufficient to support all of the counts in case no. 14669, noting that the incident involved petitioner being pulled out of water by police officers while he was swinging a knife "wildly," cutting Deputy Chief Ives on the hand. *Id.* at p. 21.[1] Mr. Bush, had no objection to the admission of the police report and stated his belief that the report satisfied the elements in the eleven counts of case no. 14669. *Id.* at pp. 22-23. Upon questioning by the judge, both of petitioner's counsel and the prosecutor stated that there were no other promises, threats of inducements related to the plea. *Id.* at pp. 24-26.

---

[1] The Court notes that while the police report with petitioner's attached confession is the document which provides the factual support for petitioner's no contest plea, neither party has submitted a copy of the report to the Court.

The judge addressed two other matters related to the plea. The first pertained to petitioner's mental competency with the judge noting that petitioner had had a competency hearing and had been found "competent." *Id.* at p.23. The judge advised petitioner that if the court accepted his no contest plea that petitioner would be giving up any defense as to mental competency. *Id.* at p. 23. Petitioner acknowledged this and stated that he wished to proceed with the plea. Attorney Bush stated that he and petitioner discussed defenses earlier that day and agreed that there was a basis for giving up the competency defense. *Id.* In this regard, Attorney Bush stated that he met with petitioner at the jail on "Monday afternoon" (January 21, 2008), "yesterday" (January 23, 2008) and on the day of the plea (January 24, 2008). *Id.* at p. 25. Petitioner agreed that those meetings occurred. *Id.* at p. 26.

Based upon the record, the trial court stated:

> I believe the plea made is accurate, understanding, and voluntary, with the advise of counsel, and I'm satisfied from a review of the offer of proof and the police reports that there is a factual basis to support a finding that you're guilty of the offenses charged; therefore, I accept your no contest pleas. We'll set these matters for sentencing[.]

*Id.*

## B. Petitioner's March 3, 2008 sentencing

Petitioner's sentencing was scheduled for Monday, March 3, 2008. Sent. Trans. (docket no. 19). Petitioner's counsel, Attorney Bush, asked the judge to adjourn the sentencing because he did not receive the pre-sentence report until the Thursday prior to the sentencing. *Id.* at p. 3. Attorney Bush asserted that petitioner needed additional time to "study it, comprehend it, and basically be able to yet [sic] deal with it" and that petitioner wanted an additional week or two "to be better mentally able to comprehend what is happening to him" and "to argue on his own behalf."

*Id.* Attorney Kleidon joined with the request stating that the pre-sentence report was 36 pages long and that petitioner needed an adjournment for one or two weeks. *Id.* at p. 4. The prosecutor responded that the plea agreement was designed to meet petitioner's demands (e.g., dismissing the sex crimes so that petitioner would not be labeled as a sex offender), that the body of the pre-sentence report was only five or six pages long (with the rest being a repetition of all of the charges), and that it was appropriate for the trial court to proceed with sentencing at that time. *Id.* at pp. 4-5.

The trial judge noted that a second issue with respect to sentencing arose involving an undated letter which he had received after petitioner entered the no contest pleas. The judge read the letter into the record:

> I'm under duress by my own counsel and I feel from the start they have not been working for me. I feel like a lamb being led to the slaughter.
>
> I'm in no way comfortable pertaining to my case, such as my plea, my lawyers, and my mental state. All in all, with the above court proceedings, I feel it's been a lie.
>
> I don't trust my lawyers. I asked Mr. Bush to postpone my sentencing because I don't understand all of the charges, plus I feel that I [sic] pressured to take an unfair plea that I did not want to take.
>
> It's my hopes that you'll find this letter reason enough to help me in any way you see fit.

*Id.* at pp. 5-6.

After receiving the letter, the judge stated that he had reviewed the tape recording of petitioner's plea. *Id.* at p. 6. The judge recounted that petitioner's first words when the plea hearing commenced (at about 3:00 p.m.) were "I don't know what I'm doing, I'm uncomfortable," at which point the judge stopped the proceedings. *Id.* Petitioner had about 1 1/2 hours to meet with counsel

to review the file materials, and when the plea resumed, it took nearly 45 minutes for petitioner to enter the no contest pleas. *Id.*[2] The judge reviewed petitioner's testimony at the plea hearing, petitioner's testimony that he was entering his plea of his own choice or free will and that no one had promised him anything or threatened him to give the plea. *Id.* The judge also discussed that, prior to entering a plea, petitioner had the benefit of a competency evaluation by the State Forensic Center as well as the appointment of his own expert at county expense to evaluate the state's report, and that his attorneys reviewed this information with him. *Id.*

The judge rejected petitioner's claim that his plea was involuntary and denied his request to withdraw the plea and appoint new attorneys:

> For all those reasons, I don't believe that you've established that your plea was forced, coerced, or that you did not know what you were doing. A review of the transcript or a review of the tape, even, would put to rest any fears that you were not of sound mind to make those decisions, or aware of what was being done. You said several times throughout that it was your choice to do that and that you understood the plea agreement, so I'm not going to allow you to withdraw your plea. I'm not going to appoint new attorneys, and we'll go ahead with sentencing.

*Id.* at pp. 6-7.

When the proceedings resumed, Attorney Kleidon felt that certain phrasing in the pre-sentence report could be misconstrued to suggest that petitioner had some animosity toward the police. *Id.* at pp. 10-11. The judge did not think that petitioner was angry at the police. *Id.* at pp. 10-11. Attorney Bush had no comments on the report. *Id.* at p. 11. The prosecutor noted that on page one of the pre-sentence report, one portion simply referred to an officer as "injured when he tripped while chasing [petitioner]." *Id.* The judge agreed with the prosecutor that the nature of the

---

[2] The undersigned notes that because petitioner pled no contest, the plea proceedings did not involve extensive testimony by him. Rather, the bulk of the plea proceedings involved reviewing petitioner's rights with some discussion of the government's proofs to provide a factual basis for the no contest plea.

injury should be explained and added the phrase "[w]hich resulted in the officer having surgery and missing six months of work." *Id.* at pp. 11-12.

Attorney Kleidon noted that his remaining case, no. 14667, did not require any allocution on sentencing, given that the recommendation was for 263 days, and petitioner was to receive credit for that time served. *Id.* at p. 14. Attorney Bush, with respect to case no. 14669, pointed out that petitioner was "completely different" than when he committed the crimes, that he has not been in trouble at the jail, that he keeps to himself, and has to the capacity to think, reason and understand. *Id.* at p. 15. With respect to the most serious crimes of attempted murder, which carried a recommended sentence of 20 to 50 years, Attorney Bush felt that 20 years was at the high end of the guidelines, with the range being 14.25 years to 23.75 years. *Id.* Attorney Bush felt that petitioner did not need such a high guideline range to address the issues raised in his convictions, realizing that an additional two years will be added to the sentence due to the felony firearm conviction. *Id.*

Petitioner read a letter to the judge, in which he stated, among other things, that he was very sorry for his past actions, that he is the only person to blame for this catastrophe, that he took responsibility for his heinous crimes and for any punishment, that there are no excuses for his actions, that he deserves to go to prison for the rest of his life, that he also deserves to go to hell, that he sympathizes with the people he hurt, that since his arrest he has found religion, that after he serves his time and pays back society he will become a positive influence rather than a negative one, that he expects to be punished accordingly, that he prays that the judge will punish him the way his sins deserve by looking at the good as well as the bad, that his actions were inexcusable and unacceptable, and that he has sincerely repented. *Id.* at pp. 16-17.

For his part, the prosecutor pointed out the gravity of petitioner's actions with respect to the incidents charged in case no. 14669, which involved law enforcement officers pursuing petitioner into a wooded area and a body of water:

> Your honor, this young man knew police officers were chasing him. He was armed with a pistol. He ran into the woods – hid in ambush. He waited until police officers were within extremely close range, 20 feet, and he shot at them in the area of the chest.
>
> I want the Court to consider what all – each and every one of these officers faced as they continued in pursuit of him for the purpose of defending the public's safety.
>
> I think that based upon that, the maximum under the guideline is – is barely adequate. That is more than any human being should be asked to face; the fear that – that someone in there is really trying to kill them and it's my job to go after them. That's – that's too much and 20 years is inadequate.
>
> I also – second point. I also feel that this recommendation gives [petitioner] free crime. I don't quibble with the 261 days, credit 261, for the crimes that occurred at Meijer, but I think the sentence should be consecutive and I think that the prison sentence should start out with zero credit. Thank you.

*Id.* at p. 18.

In reviewing petitioner's situation, the trial judge observed that petitioner was not the typical person charged with these type of crimes, having attended some college on scholarship. *Id.* at pp. 19-20. The judge noted that based on the police reports, it appeared that while petitioner shot in the direction of the police, he did not intend to kill them necessarily, but he wanted *them* to kill *him*. *Id.* The judge acknowledged that the police shot plaintiff "in the butt" to stop him, and found it the whole situation "very confusing and very troubling." *Id.* at pp. 20-21. The judge observed that "[t]he punishment has to fit both sides; both the protection of society and also rehabilitation for you." *Id.* at p. 20. When petitioner reminded the judge of his wound, the judge noted that they shot petitioner to stop him, not to kill him. *Id.* at p. 21.

In case no. 14667, the judge sentenced petitioner to 263 days for carrying a concealed weapon and possession of a firearm loaded in a vehicle, and 93 days for third degree retail fraud and assault and battery, with jail credit for 263 days of time served. *Id.* at pp. 21-22.

In case no 14669, the trial judge sentenced petitioner as follows: on each of the two counts of assault with intent to commit murder, 20 to 50 years; assaulting/resisting/obstructing causing serious impairment, four to 15 years with restitution of $453.00; receiving and concealing, 18 months to five years with restitution of $199.00; on each of the two charges of assault with a dangerous weapon/felonious assault, 23 months to four years; on each of the two charges of assault with a dangerous weapon, 23 months to four years with restitution of $519.74; assaulting/resisting/obstructing causing injury, 23 months to four years; and fleeing and eluding fourth degree, 261 days. *Id.* at pp. 24-25. As to each of these charges, the judge gave petitioner jail credit for 261 days served. *Id.* Finally, on the charge of felony firearm, the judge sentenced petitioner to two years, with zero credit, to be served prior to the other sentences, which would be consecutive to it. *Id.* at pp. 25-26.

On April 10, 2008, petitioner was appointed separate counsel, Attorney Ujlaky, for post-conviction matters. *See* State court docket sheet (docket no. 17).[3] On June 30, 2008, the trial judge allowed Attorney Ujlaky to withdraw upon motion because petitioner had only frivolous claims (e.g., attacking the plea, plea agreement and sentence) to pursue in post-conviction proceedings. Hearing Trans. at pp. 1-5 (docket no. 20). In support of his motion, Attorney Ujlaky stated that the record reflected a free and voluntary plea on the record, that petitioner was reluctant

---

[3] The state court docket sheets reflect that Mr. Uljaky was appointed counsel only in case no. 14669, with case no. 14667 being closed on March 3, 2008 and case no. 14668 being closed on March 13, 2008 (docket nos. 15, 16 and 17).

to go to trial on the CSC charge that was ultimately dismissed, and that petitioner was found mentally capable to stand trial. *Id.* at pp. 10-11. The judge agreed with Attorney Ujlaky's representations and allowed him to withdraw. *Id.* at pp. 11-13. The judge then advised petitioner that his only obligation is to appoint one attorney for appellate review in a plea case and that the judge did not have to appoint another attorney, "especially after the first one has found no grounds for appeal." *Id.* at p. 12.

The trial judge denied petitioner's second request for appointment of appellate counsel. *See* Order Denying Defendant's Second Request for Appointment of Counsel (Sept. 8, 2008) (docket no. 21). The order provided in pertinent part:

> On July 25, 2008 Defendant filed another Motion for Appointment of Counsel and to Modify Restitution. The court denied Defendant's Motion to Modify Restitution on August 25, 2008 and is denying his request for appointment of another appellate counsel at this time.

> Defendant does not raise any new issues in his motion for new counsel except to argue that Mr. Ujlaky did not raise on appeal the effective assistance of trial counsel. Mr. Ujlaky did explain at the June 30, 2008 hearing that he had explored that issue and found it without merit. His review of the record indicated that Mr. Pirkel was fully advised of his trial rights that he was not threatened or promised anything more then [sic] the plea agreement and that all procedures were followed during sentencing.

> The court is obligated to appoint one counsel for appellate reasons; there is no obligation to appoint successor counsel when the first does not find any appealable issues.

Order (Sept. 8, 2008) (docket no. 21).

After the denial of this motion, petitioner filed a *pro se* delayed application for leave to appeal to the Michigan Court of Appeals raising three issues:

I.      Was court appointed trial counsel, Mr. Bush, constitutionally
        ineffective by failing to investigate an involuntary confession? Did

this failure, combined with his erroneous advice render [petitioner's] plea an unknowing and involuntary one?

II.   Was court appointed appellate counsel, Mr. Ujlaky, constitutionally ineffective by failing to investigate and raise [petitioner's] ineffective assistance of trial counsel claim; by failing to be an advocate in [petitioner's] behalf; by causing [petitioner] to procedurally default; and by improperly withdrawing from representation?

III.  Did the trial court abuse its discretion and violate the Federal Constitution's Sixth and Fourteenth Amendments by refusing to appoint new appellate counsel to assist [petitioner] in pursuing his first-tier review in the Court of Appeals?

Petitioner's Delayed Application (docket no. 21).  The Michigan Court of Appeals denied the

delayed application for lack of merit in the grounds presented.  *People v. Pirkel*, No. 294032 (Mich.

App. Feb. 1, 2010) (docket no. 21).

Petitioner then filed a *pro se* application for leave to appeal to the Michigan Supreme

Court:

I.   Court appointed trial counsel Mr. Bush was constitutionally ineffective by failing to investigate an involuntary (alleged) confession.  This failure combined with counsel's lack of advice and diligence rendered [petitioner's] nolo contendere plea an unknowing and involuntary one.

II.   Appellate counsel Mr. Ujlaky was constitutionally ineffective by failing to investigate and raise [petitioner's] ineffective assistance of trial counsel claims; by failing to be an advocate in [petitioner's] behalf; and by improperly withdrawing from the representation and by causing [petitioner] to procedurally default claims.

III.  The trial court abused its discretion and violated [petitioner's] Federal Constitutional right to effective assistance of counsel by committing multiple errors.

Petitioner's Application for leave to appeal (docket no. 22). The Michigan Supreme Court denied the application, stating "we are not persuaded that the questions presented should be viewed by this Court." *People v. Pirkel*, No. 140743 (Mich. June 28, 2010) (docket no. 22).

At the conclusion of his state review, Pirkel filed a *pro se* habeas petition in this Court raising three issues with supporting facts (in his words):

I. The state violated my Sixth & Fourteenth Amendments by failing to provide the effective assistance of counsel.

  After I brought to counsel's attention to the fact that I don't remember supplying parts of an involuntary confession, counsel failed to ask any questions; nor did he inform me that I could challenge it or that the plea would waive the issue.

II. The state violated my Sixth and Fourteenth Amendments by failing to provide the effective assistance of appellate counsel.

  Counsel failed to properly investigate and raise claims that could allow me to withdraw my invalid plea; failed to file or inform me that I needed to file a motion for an evidentiary hearing [in state court] within 6 months of conviction; and failed to follow ANDERS requirements [*Anders v. California*, 386 U.S. 738 (1967)] while withdrawing from representation.

III. The state courts violated the Sixth and Fourteenth Amendments by failing to appoint new appellate counsel to represent me.

  Trial court allowed counsel to withdraw without filing the proper brief. The State Courts abused their discretion when failing to appoint new appellate counsel when meritorious issues were shown to exist.

Petition (docket no. 1). As clarified by petitioner's supporting memorandum of law, Issue I is directed at his trial attorney Mr. Bush, Issue II is directed at his appellate attorney Mr. Ujlaky, and Issue III is directed at "both the trial court and the Michigan Court of Appeals." *See* Petitioner's Memorandum at p.2 (docket no. 2).

II.      **Standard of Review and Exhaustion**

A.      **Standard of Review**

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks and citations omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, -- U.S.-- , 131 S. Ct. 770, 786 (2011). The AEDPA's deferential standard "requires Petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing

[Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 131 S. Ct. at 786-87. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S. Ct. at 786. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 786-87 (internal citations omitted).

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

### B.      Exhaustion

Before the Court may grant habeas relief to a state prisoner, however, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971), *cited in Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  However, the district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

In his answer, respondent stated that "[t]he prisoner raised the instant claims on direct appeal and, therefore, exhausted his state remedies."  Respondent's Answer at p. 8 (docket no. 13). The Court disagrees.  As discussed, *supra*, the habeas petition set forth three broad grounds for federal habeas relief.  Petitioner filed a supporting memorandum which provided factual background with respect to his broad constitutional claims,  and in so doing raised related claims which

petitioner did not exhaust in the state courts.[4]  Given the number of claims raised in this matter, the Court will  compare the claims raised in the habeas petition to those claims which petitioner raised in the Michigan appellate courts.

**B.     Petitioner's habeas claims**

**1.     Issue I (Attorney Bush)**

**a.     Issues presented in the delayed application for leave to appeal to the Michigan Court of Appeals**

In his delayed application for leave to appeal to the Michigan Court of Appeals, petitioner's Issue I raised the following alleged errors against Attorney Bush:  (1) Bush "made a serious error when he failed to investigate and attack [petitioner's] involuntary (alleged) confession;" that a competent attorney would have investigated the confession and challenged it through a *Walker* hearing; (2) petitioner did not remember receiving medical attention or *Miranda* warnings prior to his confession; (3) petitioner was "dehydrated, shot, bled for three hours, tazzered [sic] eleven times, and maced" prior to his confession; (4) petitioner did not know he had the right to an attorney prior to the confession or that it could be challenged and might not be admissible against him; (5) "[t]he Plea that [petitioner] reluctantly accepted was . . . ridiculous; and, (6) based on these circumstances petitioner's plea was not an intelligent act.   *See* Petitioner's Delayed application (docket no. 21).  Petitioner contends that he was prejudiced because a reasonable person in his shoes "would not have taken the plea had he known all of the relevant facts."  *Id.*

---

[4] In reaching this determination, Court notes that respondent filed a cryptic, three paragraph answer to petitioner's Issues II and III.

### b. Issues presented in the application for leave to appeal to the Michigan Supreme Court

In his application for leave to appeal to the Michigan Supreme Court, petitioner's Issue I raised the following claims: (1) Attorney Bush violated various sections of the Michigan Rules of Professional Conduct (MRPC) by failing to investigate petitioner's "involuntary statements," even though they were specifically brought to his attention; (2) the alleged confession was made after petitioner "had been extremely dehydrated, shot, bled for three hours, tazzered [sic] numerous times, and maced"; (3) when petitioner told Bush that he did not remember making some of these statements, Bush violated MRPC 1.4(b) "by failing to explain to [petitioner] that he had the right to challenge the alleged confession" and "that a plea would waive this rights"; (4) due to these errors, petitioner did not make a fully informed decision to plead guilty; (5) petitioner "was being pressured to take the plea"; (6) his plea was resulted from "ignorance or persuasion" and subject to be withdrawn under Michigan law; and (7) "[m]ore evidence of [petitioner's] issues should be uncovered at an evidentiary hearing." *See* Petitioner's Application for leave to appeal (docket no. 22).

### c. Issues presented in the habeas petition

In the habeas petition, Pirkel stated that his ineffective assistance of counsel claim involved the following acts: (1) Attorney Bush failed to ask any questions after petitioner told Bush that he did not remember supplying parts of the "involuntary confession"; (2) Bush did not inform petitioner that he could challenge the confession; and (3) Bush did not inform petitioner that the plea would waive the issue of the involuntary confession. In his supporting "Memorandum of Law",[5]

---

[5] The Court notes that petitioner's memorandum refers to a number of exhibits which are not a part of the record.

petitioner presented additional acts which he contends support his claim of ineffective assistance against Attorney Bush: (4) Bush violated MRPC Rule 1.3 when he failed to provide answers to "specific questions" related to the confession; (5) petitioner never understood his right to counsel while being interrogated, that his confession could be subject to a hearing to test its admissibility, or that "a plea would waive the right to challenge the issue on appeal if the Trial Court made an adverse ruling;" (5) Bush violated MRPC Rule 1.4(b) "when he failed to properly inform petitioner of these important aspects of his case;" and (6) his "plea was not an intelligent act done with sufficient awareness of the relevant circumstances" because Bush did not give him "appropriate advice at a critical stage of the proceeding" as required under *Brady v. United States*, 397 U.S. 742 (1970). *See* Petitioner's Memorandum at pp. 8-10. Finally, petitioner claims he was prejudiced because "had he known that he could challenge the alleged confession, he would have refused to accept the plea agreement." *Id.* at p. 11.

This record reflects that Pirkel's habeas petition included claims related to the ineffective assistance of his trial counsel which were not raised to *both* the Michigan Court of Appeals and the Michigan Supreme Court on his direct appeal. Those claims are: that Attorney Bush was ineffective because he violated MRPC Rules 1.3 and 1.4(b); that Bush was ineffective because he did not tell petitioner that a no contest plea would waive his right to challenge the validity of his confession; and that petitioner was pressured into making a plea.

2. **Issue II (Attorney Ujlaky)**

a. **Issues presented in the delayed application for leave to appeal to the Michigan Court of Appeals**

In his delayed application for leave to appeal to the Michigan Court of Appeals, petitioner's Issue II included the following claims related to his appellate counsel, Attorney Ujlaky:

(1) that Ujlaky did not address his claim of ineffective assistance of Attorney Bush, advising him that "since you [] told the Trial Court that the plea was voluntary and the transcripts indicate a voluntary plea, you can not subsequently claim that it was not voluntary"; (2) that petitioner stopped communicating with Ujlaky after the latter sent him a proposed stipulation and order dismissing the pursuit of post-judgment relief; (3) that Ujlaky did not raise and argue any substantive issues during his motion to withdraw (suggesting a violation of *Anders v. California*, 386 U.S. 738 (1967)); (4) that "there is a possible double jeopardy issue because [petitioner] was prosecuted twice for substantially the same offense in that he received two felonies which did arise out of the same transaction"; and (5) that the trial judge erred because there was not a valid reason for him to accept petitioner's no contest plea. *See* Petitioner's Delayed application (docket no. 21).

**b.      Issues presented in the application for leave to appeal to the Michigan Supreme Court.**

In his application for leave to appeal to the Michigan Supreme Court, petitioner's Issue II included the following claims: (1) that Attorney Ujlaky dismissed petitioner's claim of ineffective assistance of trial counsel without asking any questions or filing a motion for an evidentiary hearing; (2) that Ujlaky improperly withdrew from representing petitioner because he failed to file "a brief drawing attention to anything in the record that might arguably support the appeal"; (3) that Ujlaky's conduct at the withdrawal hearing "was similar to filing a brief against his client"; (4) that Ujlaky violated Standards 4 and 8 of Michigan's Supreme Court Administrative Order 2004-6 by failing to "accurately inform the defendant of the courses of action that may be pursued" (Standard 8) and failing to give petitioner proper procedural advice to pursue relief in propria persona (Standard 4); (5) that Ujlaky failed to advocate any issues on petitioner's behalf contrary to *Anders* and MRPC Rule 1.3.; and (6) the petitioner procedurally defaulted his ability to

withdraw his plea due to Ujlaky's failure to file a motion to withdraw the plea. *See* Petitioner's Application for leave to appeal (docket no. 22).[6]

### c.     Issues presented in the habeas petition

In the habeas petition, Pirkel stated that his ineffective assistance of appellate counsel claim involved the following acts: (1) that Attorney Ujlaky failed to properly investigate and raise claims that could allow petitioner to withdraw his invalid plea; (2) that Ujlaky failed to file or inform petitioner that he needed to file a motion for an evidentiary hearing in state court within six months of conviction; and (3) that Ujlaky failed to follow the requirements of *Anders* while withdrawing from representation. In his supporting "Memorandum of Law" petitioner specified additional acts which he contends support his claim of ineffective assistance against Attorney Ujlaky: (4) that Ujlaky "made every attempt to convince Petitioner that he could not withdraw his plea based upon a claim of ineffective assistance of Trial Counsel"; (5) that Ujlaky did not investigate "a different issue under the umbrella of ineffective assistance of trial counsel" suggested by petitioner; (6) that petitioner stopped communicating with Ujlaky on May 13, 2008, when Ujlaky sent petitioner a stipulation and order dismissing the pursuit of any post judgment relief; (7) that Ujlaky failed to file a brief drawing attention to anything that might arguably support petitioner's appeal as required by *Anders*, attaching only letters exchanged between himself and petitioner; (8) that Ujlaky could have raised a possible double jeopardy claim with respect to the assaults in case no. 14669; (9) that Ujlaky violated MRPC Rules 1.6(a) and 1.8(b) when he used "information relating to representation" of petitioner to his (petitioner's) disadvantage; (10) that Ujlaky "was

---

[6] The Court notes that petitioner included Attorney Ujlaky's final alleged error as part of his discussion of Issue I.,

actively representing conflicting interests" during the hearing on his motion to withdraw; (11) that Ujlaky displayed a disregard for petitioner's case; (12) that Ujlaky's loyalty did not lie with his client; (13) that Ujlaky failed to move to withdraw petitioner's pleas within six months of the sentencing contrary to Standards 3 and 8 of the Michigan Supreme Court Administrative Order 2004-6; and that Ujlaky "caused Petitioner to default his [i]neffective assistance of trial counsel claims pursuant to MCR 6.310(c) because [p]etitioner did not find out about this deadline before it had passed." Petitioner's Memorandum at pp. 16-21.

This record reflects that Pirkel's habeas petition included claims related to the ineffective assistance of his trial counsel which were not raised to *both* the Michigan Court of Appeals and the Michigan Supreme Court on his direct appeal. Those claims are: that Ujlaky "made every attempt to convince Petitioner that he could not withdraw his plea based upon a claim of ineffective assistance of Trial Counsel"; that Ujlaky did not investigate "a different issue under the umbrella of ineffective assistance of trial counsel" suggested by petitioner; that petitioner stopped communicating with Ujlaky on May 13, 2008, when Ujlaky sent petitioner a stipulation and order dismissing the pursuit of any post judgment relief; that Ujlaky violated MRPC Rules 1.6(a) and 1.8(b) when he used "information relating to representation" of petitioner to his (petitioner's) disadvantage; that Ujlaky "was actively representing conflicting interests" during the hearing on his motion to withdraw; that Ujlaky displayed a disregard for petitioner's case; and, that Ujlaky's loyalty did not lie with petitioner, his client.

### 3. Issue III (Trial Court and Court of Appeals)

#### a. Issues presented in the delayed application for leave to appeal to the Michigan Court of Appeals

Petitioner raised the following claims related to the trial judge's alleged errors in his delayed application for leave to appeal to the Michigan Court of Appeals: (1) that the June 30, 2008 proceeding was unfair because Attorney Ujlaky failed to file a proper brief; (2) that if Ujlaky's submissions were considered a brief, they did not reflect zealous advocacy as required under *Penson v. Ohio*, 488 U.S. 75 (1988); (3) that the trial court did not have an adequate basis to determine whether Ujlaky's evaluation of the case was sound; (4) that the trial judge failed to allow Ujlakey to withdraw without outlining possible grounds for an appeal; and (5) that the trial judge abused his discretion in failing to appoint new counsel to pursue non-frivolous issues on appeal in violation of *Halbert v. Michigan*, 545 U.S. 605 (2005). *See* Petitioner's Delayed application (docket no. 21).

#### b. Issues presented in the application for leave to appeal to the Michigan Supreme Court.

In his application for leave to appeal to the Michigan Supreme Court, petitioner raised the following matters in Issue III: (1) the trial judge granted appellate counsel's motion to withdraw without an accompanying brief in support of that motion violating *Penson v. Ohio*, 488 U.S. 75; (2) the trial judge failed to examine the record to determination whether counsel's evaluation of the case was sound; (3) the trial judge erred in failing to appoint new counsel after it discovered arguable grounds for appeal; (4) the trial judge made a clearly erroneous finding of fact in denying petitioner's motion for reconsideration for appointment of counsel; (5) the trial judge "was presented with an arguable claim and then chose an outcome falling outside the principle range of outcomes"; and, (6) the Michigan Court of Appeals erred "when it failed to grant [petitioner] the

appropriate relief to rectify the Trial Court's errors" (including appointing appellate counse). *See* Petitioner's Application for leave to appeal (docket no. 22).

        **c.**      **Issues presented in the habeas petition**

        In the habeas petition, Pirkel stated that the Michigan state courts (i.e., the trial court and the Michigan Court of Appeals) violated his Sixth and Fourteenth Amendment rights by failing to appoint new appellate counsel because: (1) the trial court allowed Attorney Ujlaky to withdraw without filing the proper brief; and (2) the trial court and Michigan Court of Appeals abused their discretion when failing to appoint new appellate counsel when meritorious issues were shown to exist. In his supporting "Memorandum of Law" petitioner included additional acts which he contends support his claim: (1) the motion for withdrawal of appellate counsel was unfair "because it became a competition placing [p]etitioner against his own [a]ttorney and the [p]rosecution"; (2) the trial judge did not have "an adequate basis for determining that counsel had performed his duty of carefully searching the record for arguable error"; (3) the trial judge could not fairly decide whether petitioner's claims were frivolous without someone advocating those claims to the best of their abilities in [p]etitioner's behalf"; (4) the trial judge violated petitioner's 14th Amendment rights by adjudicating Attorney Ujlaky's deficient motion to withdraw; (5) the trial judge abused his discretion when it failed to appoint new counsel to represent petitioner in his first-tier review of his conviction contrary to *Halbert*, 545 U.S. 605; and, (6) the Michigan Court of Appeals abused its discretion when it was presented with this non-frivolous issue and failed to appoint petitioner counsel.

        This record reflects that Pirkel's habeas petition included claims related to the state court's rulings on his appellate counsel which were not raised to *both* the Michigan Court of Appeals

and the Michigan Supreme Court on his direct appeal. Those claims are: the motion for withdrawal of appellate counsel was unfair "because it became a competition placing [p]etitioner against his own [a]ttorney and the [p]rosecution"; the trial judge could not fairly decide whether petitioner's claims were frivolous without someone advocating those claims to the best of their abilities in [p]etitioner's behalf"; the trial judge abused his discretion when he failed appoint new counsel to represent petitioner in his first-tier review of his conviction contrary to *Halbert*, 545 U.S. 605; and the Michigan Court of Appeals abused its discretion when it failed to appoint new appellate counsel when meritorious issues were shown to exist.

### C.     Discussion

The record reflects that petitioner has not exhausted a number of claims raised in Issues I, II and III. *See* §§ II.B.1.c., 2.c. and 3.c., *supra*. An applicant for federal habeas relief has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Here, petitioner has such a remedy because he has not yet filed his one allotted motion for relief from judgment under MCR 6.500 *et. seq*. Therefore, the Court concludes that petitioner has at least one available state remedy to exhaust these claims.

Because Petitioner has some claims that are exhausted and some that are not, his petition is "mixed." Under *Rose v. Lundy*, 455 U.S. 509, 22 (1982), district courts are directed to dismiss mixed petitions without prejudice in order to allow petitioners to return to state court to exhaust remedies. However, since the habeas statute was amended to impose a one-year statute of limitations on habeas claims, *see* 28 U.S.C. § 2244(d)(1), dismissal without prejudice often precludes future federal habeas review. This is particularly true after the Supreme Court ruled in

*Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), that the limitations period is not tolled during the pendency of a federal habeas petition. In this case, the limitations period has expired, effectively precluding petitioner's ability to exhaust these claims and file a future federal habeas petition.

A district court, however, has the discretion to stay a habeas corpus proceeding "in limited circumstances." *Rhines v. Weber*, 544 U.S. 268, 277 (2005). A "stay and abeyance" procedure may be employed when the petitioner has filed a "mixed petition," i.e., a petition raising both exhausted and unexhausted claims. *Id.* Under the stay and abeyance procedure, "courts now have discretion to stay a mixed habeas petition to allow a petitioner to present his unexhausted claims to the state court, and then return to federal court." *Poindexter v. Mitchell*, 454 F.3d 564, 570 n. 2 (6th Cir. 2006). However, the Supreme Court cautioned that federal courts should not utilize the "stay and abeyance" procedure frequently since doing so undermines the purpose of the AEDPA, which is to encourage finality and streamline federal habeas proceedings. In its discretion, a district court contemplating stay and abeyance should stay the mixed petition pending prompt exhaustion of state remedies if there is "good cause" for the petitioner's failure to exhaust, if the petitioner's unexhausted claims are not "plainly meritless" and if there is no indication that the petitioner engaged in "intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 277-78. Moreover, under *Rhines*, if the district court determines that a stay is inappropriate, it must allow the petitioner the opportunity to delete the unexhausted claims from his petition, especially in circumstances in which dismissal of the entire petition without prejudice would "unreasonably impair the petitioner's right to obtain federal relief." *Id.*

The Court concludes that the stay and abeyance procedure set forth in *Rhines* should be applied in this case. Petitioner has filed a mixed petition containing both exhausted and

unexhausted habeas claims. Petitioner's unexhausted claims, specifically those related to the appointment of an appellate attorney under *Halbert* and the withdrawal of that appellate attorney under *Anders*, are not plainly meritless. There is no indication that petitioner engaged in intentionally dilatory tactics. Finally, the Court finds that petitioner has good cause for his failure to exhaust these claims. In this case, in which the trial judge allowed petitioner's appointed appellate counsel to withdraw, petitioner faced the unanticipated task of identifying and briefing issues for a direct appeal, which included appealing the trial judge's order allowing the withdrawal of his appellate counsel. Under the circumstances of this particular case, the Court considers petitioner's unanticipated burdens associated with bringing a *pro se* "first-tier" appeal as good cause for allowing a stay and abeyance. "'[G]ood cause' for failing to exhaust state remedies . . . is not intended to impose the sort of strict and inflexible requirement that would 'trap the unwary *pro se* prisoner.'" *Rhines,* 544 U.S. at 279 (Stevens, J. concurring) (internal citation omitted). That being said, petitioner should be given the opportunity to either return to state court and exhaust the unexhausted claims or to re-file an amended habeas petition which drops the unexhausted claims.

**IT IS ORDERED** that within **28** days of this order, petitioner shall return to the state court to present his unexhausted claims identified in §§ II.B.1.c., 2.c. and 3.c.

**IT IS FURTHER ORDERED** that petitioner's action is hereby stayed until petitioner files a motion to amend his petition to include the exhausted claims. Such motion must be filed not later than **28** days after a final decision by the Michigan Supreme Court on these claims and shall include the dates and substance of decision at each step of state-court review.

**IT IS FURTHER ORDERED** that petitioner may, in the alternative, file a motion to amend his petition to dismiss his unexhausted claims identified in §§ II.B.1.c., 2.c. and 3.c.  Such motion must be filed not later than **28** days after the entry of this order.

**IT IS FURTHER ORDERED** that if petitioner fails to comply with the deadlines imposed in this order, the Court may dismiss the petition.

**IT IS FURTHER ORDERED** that petitioner shall advise the Court of any change of address occurring during the pendency of the stay.

**IT IS FURTHER ORDERED** that this case shall be administratively closed until such time a petitioner files a motion to amend his petition in accordance with the procedures set forth in this order.

Dated:  March 3, 2014                                    /s/ Hugh W. Brenneman, Jr.
                                                         HUGH W. BRENNEMAN, JR.
                                                         United States Magistrate Judge