UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL MARTIN PIRKEL,

        Petitioner,

                                 Case No.  1:11-cv-205

v.                                 Hon.  Robert J. Jonker

CARMEN PALMER,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

        Daniel Martin Pirkel, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, his petition should be denied.

**I.**        **Background**

**A.**        **Pirkel's pleas entered on January 24, 2008**

        Pirkel (sometimes referred to as "petitioner") was the defendant in three criminal cases filed in the St. Joseph County Circuit Court (Nos. 14667, 14668 and 14669).  Plea Trans. (ECF No. 18).  Attorney Kleidon represented Pirkel in two cases (Nos. 14667 and 14668) and Attorney Bush represented Pirkel in one case (No. 14669).  *See* Docket sheets (ECF Nos. 15, 16 and 17).

**i.**        **No. 14667 (criminal conduct at the Meijer store)**

        No. 14667 charged Pirkel with four counts of criminal misconduct that occurred on June 5, 2007.

        Count 1: carrying a concealed weapon, M.C.L. § 750.227 (a felony punishable by up to five years in prison).

Count 2: possession of a loaded firearm in a vehicle, M.C.L. § 750.227c (a high court misdemeanor punishable by up to two years in prison).

Count 3: third degree retail fraud, M.C.L. § 750.356d(4) (93-day misdemeanor).

Count 4: assault or assault and battery, M.C.L. § 750.81 (93-day misdemeanor). Plea Trans. at p. 10; Docket sheet (ECF No. 15).  On June 6, 2007, the state court released Pirkel on a cash or surety bond posted by a bail bond company.  Docket sheet (ECF No. 15).

### ii.    No. 14668 (criminal sexual conduct)

No. 14668 charged Pirkel with two counts of criminal sexual misconduct that occurred on May 25, 2007.

Count 1: second degree criminal sexual conduct, M.C.L. § 750.520c(1)(a) (a felony punishable by up to 15 years in prison).

Count 2: accosting a child for immoral purposes, M.C.L. § 750.145a (a felony punishable by up to four years in prison).  Plea Trans. at pp. 10-11; Docket sheet (ECF No. 16).  The complaint was filed on June 8, 2007, two days after Pirkel posted his bond for the charges which occurred at the store.  On June 13, 2007, the state court placed Pirkel on a personal recognizance bond for these felony charges.  *See* Docket Sheet (ECF No. 16).

### iii.    No. 14669 (assaulting and fleeing from law enforcement officers)

On June 16, 2007, while released on the cash bond and personal recognizance, Pirkel went on a crime spree.  Pirkel was arrested that day and charged in No. 14669 with 11 crimes.

Count 1: assault with intent to murder a police officer, Michigan State Trooper Michael Thyng, M.C.L. § 750.83 (a felony punishable by life or any number of years).

Count 2: assault with intent to murder Tom Hicks, M.C.L. § 750.83 (a felony punishable by up to life or any number of years).

Count 3: assaulting, resisting, obstructing or causing serious impairment on police officer Todd Bohm, M.C.L. § 750.81d(3) (a felony punishable by up to 15 years).

Count 4: receiving and concealing stolen property over $1,000.00 but less than $20,000.00,  M.C.L. § 750.535(3)(a) (a felony punishable by up to five years and/or $10,000).

Count 5: assault with a dangerous weapon/felonious assault against Officer Todd Bohm, M.C.L. § 750.82, (punishable by up to four years).

Count 6: assault with a dangerous weapon/felonious assault against Officer Noel Jimenez, M.C.L. § 750.82 (punishable by up to four years).

Count 7: assault with a dangerous weapon and felonious assault on Michigan Department of Natural Resources (DNR) Officer Ken Cerny, M.C.L. § 750.82 (punishable by up to four years).

Count 8: assault with a dangerous weapon on Sturgis Police Department Deputy Chief Ives, M.C.L. § 750.82 (a felony punishable by up to four years).

Count 9: assaulting, resisting, obstructing, causing injury to Deputy Chief Ives, M.C.L. § 750.81d (a felony punishable by up to four years).

Count 10: fleeing and eluding a police officer in the fourth degree, M.C.L. § 257.602a(2) (a felony punishable by up to two years).

Count 11: felony firearm, M.C.L. § 750.227b (punishable by a mandatory two-year sentence consecutive to and preceding any other term of imprisonment imposed).   Plea Trans. at pp. 11-12, 21; Docket sheet (ECF No. 17).

3

### iv.    Pirkel's plea

Pirkel agreed to enter into a plea deal with the prosecutor to resolve all three cases. At the commencement of the plea hearing, when St. Joseph County Circuit Court Judge Paul Stutesman (the "judge") asked Pirkel if he wished to enter a plea, Pirkel gave an equivocal response:

> I understand it but I don't know, I'm just reading stuff right now for the first time I've ever read it – or known about it, but I – I feel like I'm getting my arm twisted.

Plea Trans. at p. 3.  At that point, the judge stopped the proceedings and allowed Pirkel to review the material with his attorneys.  *Id.* at pp. 3-4.  This material consisted of the police reports from the June 16, 2007 incidents.  *Id.*

The judge resumed the proceedings after about one and a half hours.  *Id.* at p. 4.  At that time, he explained that under the parties' plea agreement, the sex offenses charged in No. 14668 would be dismissed in exchange for a guilty plea on all counts charged in No. 14667, and a no contest plea to all counts charged in No. 14669.  *Id.* at pp. 5-6.  After further discussion on the record, Pirkel stated that understood the terms of the plea agreement.  *Id.* at p. 10.

Ultimately, Pirkel pled no contest to all of the counts charged in Nos. 14667 and 14669, in exchange for the prosecutor's dismissal of the sex offenses charged in No. 14668.  *Id.* at pp. 14-16.  In response to the judge's questions, Pirkel stated:  that he understood that the judge would treat his no contest plea as if he had pled guilty or been found guilty by a jury or the judge; that he read the rights forms in Nos. 14667 and 14669; and that he understood that by pleading no contest he was giving up the rights he would have at a trial as set forth on those forms.  *Id.* at p. 17. Upon further questioning from the trial judge Pirkel stated:  that he was not presently on probation or parole; that no one promised him anything to plead no contest other than what was said in court

4

that day; that no one had threatened him to plead no contest; that he was pleading no contest of his own free will; and, that he understood that once his no contest plea was accepted, he could not return at a later date and claim that there were promises or threats that he failed to tell the judge at the plea hearing, or that it was not his "own free choice to plead no contest to these charges." *Id.* at pp. 16-18.

The prosecutor then made the following offer of proof with respect to No. 14667, the charges which arose from Pirkel's actions in the store and parking lot on June 5, 2007:

> On the date in question, Mr. Pirkel was seen acting suspiciously in the store. One of the things he did is walk up to a woman by the name of Diana Bunch, who worked at the store and asked him if she could help him. They had a brief conversation; they were face to face. He reached around behind her and grabbed one of her bucket – buttocks and squeezed. That – and that's the basis for the assault and battery charge.

> Then the store personnel started watching him. They saw him pull – pull the store alarm – fire alarm, and then walk out with other customers in the – in a crowd, and then alarm went off. They later found that a pair of boots were stolen from the store that morning, and those boots were in fact worn by Mr. Pirkel when he was arrested in the parking lot that day.

> When he was arrested, he was trying to gain entry into the car which was locked. Found in the car was a – a rifle, a forty caliber rifle, which by inference, he had to have had in the car when he drove to the store, supporting the carrying a concealed weapons charge.

> When the weapon was inspected by Officer Sangalli and Sergeant Smith, the – the rifle was found to be loaded with a – a ten round magazine, supporting possession of a loaded firearm in or upon a vehicle.

*Id.* at pp. 18-19.

The prosecutor made an offer of proof with respect to the charges in No. 14669 by presenting copies of the police reports related to the June 16, 2017 incidents. The judge reviewed the reports and proposed admitting them to establish the elements of the offenses. *Id.* at p. 20. The

5

prosecutor observed that the judge had taken a break to allow Pirkel to read the reports himself. *Id.* Pirkel's attorneys had no objection to proceeding in this manner, which did not require testimony from the reporting officers. *Id.* at pp. 20-21. After some discussion, the judge concluded that the police reports were sufficient to support all of the counts in No. 14669, noting that the incident involved Pirkel being pulled out of water by police officers while he was swinging a knife "wildly" and cutting Deputy Chief Ives on the hand. *Id.* at p. 21. Mr. Bush stated his belief that the reports satisfied the elements in all counts charged in No. 14669. *Id.* at pp. 22-23.[1] Upon questioning by the judge, the prosecutor and both of Pirkel's attorneys stated that there were no other promises, threats or inducements related to the plea. *Id.* at pp. 24-26.

Next, the judge noted that Pirkel was found competent after a competency hearing and advised Pirkel that if the court accepted his no contest plea, he would be giving up any defense as to mental competency. *Id.* at p. 23. Pirkel acknowledged this and stated that he wished to proceed with the plea. Attorney Bush stated that he and Pirkel discussed defenses earlier that day and agreed that there was a basis for giving up the competency defense. *Id.* In this regard, Attorney Bush stated that he met with Pirkel at the jail on "Monday afternoon" (January 21, 2008), "yesterday" (January 23, 2008) and on the day of the plea (January 24, 2008). *Id.* at p. 25. Pirkel agreed that those meetings occurred. *Id.* at p. 26.

Based upon the record, the trial judge accepted the plea, stating:

> I believe the plea made is accurate, understanding, and voluntary, with the advise of counsel, and I'm satisfied from a review of the offer of proof and the police reports that there is a factual basis to support a finding that you're guilty of the

---

[1] While it appears that the police reports included a copy of a statement by Pirkel, plea, neither party has submitted a copy of the statement. In addition, the Court notes that it does not appear that the judge relied on this statement to satisfy the factual basis of Pirkel's plea.

6

offenses charged; therefore, I accept your no contest pleas.  We'll set these matters for sentencing[.]

*Id.*

### B.    Pirkel's sentencing

The judge sentenced Pirkel on Monday, March 3, 2008.  Sent. Trans. (ECF No. 19). At the sentencing, Attorney Bush asked for an adjournment because he did not receive the pre-sentence report until the Thursday prior to the sentencing. *Id.* at p. 3.  Attorney Bush asserted that Pirkel needed additional time to "study it, comprehend it, and basically be able to yet [sic] deal with it" and that Pirkel wanted an additional week or two "to be better mentally able to comprehend what is happening to him" and "to argue on his own behalf." *Id.*  Attorney Kleidon joined with the request stating that the pre-sentence report was 36 pages long and that Pirkel needed an adjournment for one or two weeks. *Id.* at p. 4.  The prosecutor responded: that the plea agreement was designed to meet Pirkel's demand that the sex crimes be dismissed so that he would not be labeled as a sex offender; that the body of the pre-sentence  report was only five or six pages long with the balance of the report being a repetition of the charges; and that it was appropriate for the judge to proceed with sentencing at that time. *Id.* at pp. 4-5.

The judge noted that there was another issue with respect to sentencing which involved an undated letter he received from Pirkel after the plea hearing, which stated as follows:

I'm under duress by my own counsel and I feel from the start they have not been working for me.  I feel like a lamb being led to the slaughter.

I'm in no way comfortable pertaining to my case, such as my plea, my lawyers, and my mental state.  All in all, with the above court proceedings, I feel it's been a lie.

7

I don't trust my lawyers.  I asked Mr. Bush to postpone my sentencing because I don't understand all of the charges, plus I feel that I [sic] pressured to take an unfair plea that I did not want to take.

It's my hopes that you'll find this letter reason enough to help me in any way you see fit.

*Id.* at pp. 5-6.

The judge stated that after he received the letter, he reviewed the tape recording of the plea. *Id.* at p. 6.  The judge recounted that Pirkel's first words when the plea hearing commenced were "I don't know what I'm doing, I'm uncomfortable," at which point the judge stopped the proceedings.  *Id.*  Pirkel met with his with counsel for about one and one-half hours to review the file materials, and when the plea resumed, it took nearly 45 minutes for Pirkel to enter the no contest pleas.  *Id.*  The judge stated that he reviewed Pirkel's testimony at the plea hearing, including testimony that he was entering his plea of his own choice or free will and that no one had promised him anything or threatened him to give the plea.  *Id.*  In addition, prior to entering a plea, Pirkel had the benefit of a competency evaluation by the State Forensic Center as well as the appointment of his own expert at county expense to evaluate the state's report, and that his attorneys reviewed this information with him.  *Id.*

The judge rejected Pirkel's claim that his plea was involuntary and denied his letter motion/request to withdraw the plea and appoint new attorneys:

For all those reasons, I don't believe that you've established that your plea was forced, coerced, or that you did not know what you were doing.  A review of the transcript or a review of the tape, even, would put to rest any fears that you were not of sound mind to make those decisions, or aware of what was being done.  You said several times throughout that it was your choice to do that and that you understood the plea agreement, so I'm not going to allow you to withdraw your plea.  I'm not going to appoint new attorneys, and we'll go ahead with sentencing.

*Id.* at pp. 6-7.

When the proceedings resumed, Attorney Kleidon felt that certain phrasing in the pre-sentence report could be misconstrued to suggest that Pirkel had animosity toward the police. *Id.* at pp. 10-11.  The judge did not think that Pirkel was angry at the police. *Id.* at pp. 10-11.  Attorney Bush had no comments on the report. *Id.* at p. 11.  The prosecutor noted that on page one of the pre-sentence report, one portion simply referred to an officer as "injured when he tripped while chasing [petitioner]." *Id.*  The judge agreed with the prosecutor that the nature of the injury should be explained and added the phrase "[w]hich resulted in the officer having surgery and missing six months of work." *Id.* at pp. 11-12.

Attorney Kleidon noted that the remaining case in which he represented Pirkel, No. 14667 (the criminal conduct at the store), did not require any allocution on sentencing, given that the recommendation was for a sentence of 263 days and Pirkel was to receive credit for that time served. *Id.* at p. 14.

With respect to No. 14669, Attorney Bush pointed out that Pirkel was "completely different" than when he committed the crimes against the officers, that he has not been in trouble at the jail, that he keeps to himself, and has to the capacity to think, reason and understand. *Id.* at p. 15.  With respect to the most serious crimes of attempted murder, which carried a recommended sentence of 20 to 50 years, Attorney Bush felt that 20 years was at the high end of the guidelines, with the range being 14.25 years to 23.75 years. *Id.*  Attorney Bush felt that Pirkel did not need such a high guideline range to address the issues raised in his convictions and noting that an additional two years will be added to the sentence due to the felony firearm conviction. *Id.*

Pirkel read a letter to the judge, in which he stated, among other things, that he was very sorry for his past actions, that he is the only person to blame for this catastrophe, that he took

responsibility for his heinous crimes and for any punishment, that there are no excuses for his actions, that he deserves to go to prison for the rest of his life, that he also deserves to go to hell, that he sympathizes with the people he hurt, that since his arrest he has found religion, that after he serves his time and pays back society he will become a positive influence rather than a negative one, that he expects to be punished accordingly, that he prays that the judge will punish him the way his sins deserve by looking at the good as well as the bad, that his actions were inexcusable and unacceptable, and that he has sincerely repented. *Id.* at pp. 16-17.

For his part, the prosecutor pointed out the gravity of Pirkel's offenses in No. 14669, which involved law enforcement officers pursuing Pirkel into a wooded area and a body of water:

> Your honor, this young man knew police officers were chasing him. He was armed with a pistol. He ran into the woods – hid in ambush. He waited until police officers were within extremely close range, 20 feet, and he shot at them in the area of the chest.
>
> I want the Court to consider what all – each and every one of these officers faced as they continued in pursuit of him for the purpose of defending the public's safety.
>
> I think that based upon that, the maximum under the guideline is – is barely adequate. That is more than any human being should be asked to face; the fear that – that someone in there is really trying to kill them and it's my job to go after them. That's – that's too much and 20 years is inadequate.
>
> I also – second point. I also feel that this recommendation gives Mr. Pirkel free crime. I don't quibble with the 261 days, credit 261 [sic], for the crimes that occurred at Meijer, but I think the sentence should be consecutive and I think that the prison sentence should start out with zero credit. Thank you.

*Id.* at p. 18.

In reviewing Pirkel's situation, the judge observed that he was not the typical person charged with these types of crimes, having some college courses and a scholarship. *Id.* at pp. 19-20. The judge noted that based on the police reports, it appeared that while Pirkel shot in the direction

10

of the police, he did not intend to kill them necessarily, but wanted them to kill him.  *Id.*  The judge acknowledged that the police shot Pirkel "in the butt" to stop him, and found the whole situation "very confusing and very troubling."  *Id.* at pp. 20-21.  The judge observed that "[t]he punishment has to fit both sides; both the protection of society and also rehabilitation for you."  *Id.* at p. 20. When Pirkel reminded the judge of his wound, the judge noted that they shot Pirkel to stop him, not to kill him.  *Id.* at p. 21.

In No. 14667, the judge sentenced Pirkel to 263 days for carrying a concealed weapon and possession of a firearm loaded in a vehicle, and 93 days for third degree retail fraud and assault and battery, with jail credit for 263 days of time served.  *Id.* at pp. 21-22.

In No. 14669, the judge sentenced Pirkel as follows: on each of the two counts of assault with intent to commit murder, 20 to 50 years; assaulting/resisting/obstructing causing serious impairment, four to 15 years with restitution of $453.00; receiving and concealing, 18 months to five years with restitution of $199.00; on each of the two charges of  assault with a dangerous weapon and felonious assault, 23 months to four years; on each of the two charges of assault with a dangerous weapon, 23 months to four years with restitution of $519.74; on the charge of assaulting, resisting, and obstructing causing injury, 23 months to four years; and on the charge of fleeing and eluding fourth degree, 261 days.  *Id.* at pp. 24-25.  As to each of these charges, the judge gave Pirkel jail credit for 261 days served.  *Id.*  Finally, on the charge of felony firearm, the judge sentenced Pirkel to two years, with zero credit, to be served preceding and consecutive to the other sentences. *Id.* at pp. 25-26.

## C.    Appellate counsel's appointment and withdrawal

On  April 10, 2008, the judge appointed Attorney Ujlaky as Pirkel's counsel for post-conviction matters in No. 14669.  *See* Docket sheet (ECF No. 17).[2]  Attorney Ujlaky filed a motion to withdraw on June 5, 2008.  *Id.*  After a hearing held on June 30, 2008, the  judge allowed Attorney Ujlaky to withdraw because Pirkel had only frivolous claims to pursue in post-conviction proceedings, i.e., attacking the validity of the plea, the plea agreement and the sentence.  Motion Trans. at pp. 1-5 (ECF No. 20).  At the hearing, Attorney Ujlaky stated that the record reflected: that Pirkel gave a free and voluntary plea; that Pirkel was reluctant to go to trial on the sexual misconduct charges that were ultimately dismissed; and, that Pirkel was found mentally capable to stand trial.  *Id.* at pp. 10-11.   The judge agreed with Attorney Ujlaky and granted the motion to withdraw.  *Id.* at pp. 11-13.  The judge advised Pirkel that he is obligated to appoint only one attorney for appellate review in a plea case and that he does not have to appoint another attorney "especially after the first one has found no grounds for appeal."  *Id.* at p. 12.

On September 8, 2008, the judge denied Pirkel's second request for appointment of appellate counsel, stating in pertinent part:

> On July 25, 2008 Defendant filed another Motion for Appointment of Counsel and to Modify Restitution.  The court denied Defendant's Motion to Modify Restitution on August 25, 2008 and is denying his request for appointment of another appellate counsel at this time.
>
> Defendant does not raise any new issues in his motion for new counsel except to argue that Mr. Ujlaky did not raise on appeal the effective assistance of trial counsel.  Mr. Ujlaky did explain at the June 30, 2008 hearing that he had explored that issue and found it without merit.  His review of the record indicated that Mr. Pirkel was fully advised of his trial rights that he was not threatened or promised

---

[2] The other two cases, Nos. 14667  and 14668, were closed on March 3, 2008 and March 13, 2008, respectively.  *See* Docket sheets (ECF Nos. 15 and16).

anything more then the plea agreement and that all procedures were followed during sentencing.

The court is obligated to appoint one counsel for appellate reasons; there is no obligation to appoint successor counsel when the first does not find any appealable issues.

Order (Sept. 8, 2008) (ECF No. 21).  Pirkel filed a letter/motion for reconsideration (dated October 29, 2008), which was denied on November 3, 2008.  *See* Exhibits (ECF No. 32-1).

### D.    Pirkel's state appeal

After the denial of this motion, Pirkel filed a *pro se* delayed application for leave to appeal to the Michigan Court of Appeals raising three issues:

I.      Was court appointed trial counsel, Mr. Bush, constitutionally ineffective by failing to investigate an involuntary confession?  Did this failure, combined with his erroneous advise render [Pirkel's] plea an unknowing and involuntary one?

II.     Was court appointed appellate counsel, Mr. Ujlaky, constitutionally ineffective by failing to investigate and raise [Pirkel's] ineffective assistance of trial counsel claim; by failing to be an advocate in [Pirkel's] behalf; by causing [Pirkel] to procedurally default; and by improperly withdrawing from representation?

III.    Did the trial court abuse its discretion and violate the Federal Constitution's Sixth and Fourteenth Amendments by refusing to appoint new appellate counsel to assist [Pirkel] in pursuing his first-tier review in the Court of Appeals?

Delayed Application (ECF No. 21).  The Michigan Court of Appeals denied the delayed application for lack of merit in the grounds presented.  *People v. Pirkel*, No. 294032 (Mich. App. Feb. 1, 2010) (ECF No. 21).

Then, Pirkel filed a *pro se* application for leave to appeal to the Michigan Supreme Court raising the following issues:

13

     I.      Court appointed trial counsel Mr. Bush was constitutionally ineffective by failing to investigate an involuntary (alleged) confession.  This failure combined with counsel's lack of advice and diligence rendered [Pirkel's] nolo contendere plea an unknowing and involuntary one.

     II.     Appellate counsel Mr. Ujlaky was constitutionally ineffective by failing to investigate and raise [Pirkel's] ineffective assistance of trial counsel claims; by failing to be an advocate in [Pirkel's] behalf; and by improperly withdrawing from the representation and by causing [Pirkel] to procedurally default claims.

     III.    The trial court abused its discretion and violated [Pirkel's] Federal Constitutional right to effective assistance of counsel by committing multiple errors.

Application for leave to appeal (ECF No. 22).  The Michigan Supreme Court denied the application, stating "we are not persuaded that the questions presented should be viewed by this Court."  *People v. Pirkel*, No. 140743 (Mich. June 28, 2010) (ECF No. 22).

### E.     Pirkel's habeas petition

At the conclusion of his state review, Pirkel filed a *pro se* habeas petition in this Court raising three issues with supporting facts (in his words):

     I.      The state violated my Sixth & Fourteenth Amendments by failing to provide the effective assistance of counsel.

             After I brought to counsel's attention to the fact that I don't remember supplying parts of an involuntary confession, counsel failed to ask any questions; nor did he inform me that I could challenge it or that the plea would waive the issue.

     II.     The state violated my Sixth and Fourteenth Amendments by failing to provide the effective assistance of appellate counsel.

             Counsel failed to properly investigate and raise claims that could allow me to withdraw my invalid plea; failed to file or inform me that I needed to file a motion for an evidentiary hearing [in state court] within 6 months of conviction; and failed to follow ANDERS

14

requirements [*Anders v. California*, 386 U.S. 738 (1967)] while withdrawing from representation.

III.    The state courts violated the Sixth and Fourteenth Amendments by failing to appoint new appellate counsel to represent me.

Trial court allowed counsel to withdraw without filing the proper brief. The State Courts abused their discretion when failing to appoint new appellate counsel when meritorious issues were shown to exit.

Petition (ECF No. 1).  As clarified by Pirkel's supporting memorandum of law, Issue I is directed at his trial attorney Mr. Bush, Issue II is directed at his appellate attorney Mr. Ujlaky, and Issue III is directed at "both the trial court and the Michigan Court of Appeals." *See* Memorandum (ECF No. 2, PageID.16).

### F.    The Order to stay proceedings and later developments

### 1.    Developments since March 3, 2014

On March 3, 2014, the Court entered a 29-page order which identified Pirkel's unexhausted claims and stayed the proceedings to allow him to return to the state court and exhaust those claims.  *See* Order to stay proceedings (ECF No. 29).  The case was administratively closed on that date to allow Pirkel to accomplish this task. This order started a chain of events which included, among other things:  Pirkel filing a motion to amend (ECF No. 30); an order denying the motion to amend, for reconsideration, and for appointment of counsel, which advised Pirkel that the case shall remain administratively closed until he returns from the state court proceedings and files a motion to amend petition (ECF No. 34); another motion to amend the petition (ECF No. 36); an order re-opening the case and granting Pirkel's alternative relief of proceeding with only the exhausted claims (ECF No. 40); Pirkel's objection to that order (ECF No. 41); an order denying the objection (ECF No. 45); Pirkel's notice of an interlocutory appeal (ECF No. 46); the Sixth Circuit's

dismissal of that appeal for lack of jurisdiction (ECF No. 51); Pirkel's third motion for appointment of counsel (ECF No. 53); an order denying that request (ECF No. 55); Pirkel's "Rule 60 motion" for the court to consider the merits of his case (ECF No. 57); and an order denying that motion as unnecessary (ECF No. 58).

## 2. Pirkel's exhausted claims

This case has come full circle from the procedural quagmire created by Pirkel's attempt to seek habeas relief for claims which he did not raise in the state courts.  In the end, Pirkel did not return to state court and did not take steps to exhaust his unexhausted claims.  The Court's March 3, 2014 order identified Pirkel's unexhausted claims.  Based on that order, the Court concludes that the following exhausted claims are subject to habeas review.

### a. Issue I:  Claims against Attorney Bush

Pirkel exhausted four claims of ineffective assistance of trial counsel against Attorney Bush: (1) that Bush failed to ask any questions after Pirkel told Bush that he did not remember supplying parts of an allegedly involuntary confession; (2) that Bush did not inform Pirkel that he could challenge the confession; (3) that Pirkel never understood his right to counsel while being interrogated, that his confession could be subject to a hearing to test its admissibility, or that "a plea would waive the right to challenge the issue on appeal if the Trial Court made an adverse ruling"; and, (4) that Pirkel's "plea was not an intelligent act done with sufficient awareness of the relevant circumstances" because Bush did not give him "appropriate advice at a critical stage of the proceeding."  Order (ECF No. 29, PageID.141-142).

### b.    Issue II: Claims against Attorney Ujlaky

Pirkel exhausted seven claims of ineffective assistance of appellate counsel against Attorney Uljaky: (1) that Ujlaky failed to properly investigate and raise claims that could allow Pirkel to withdraw his invalid plea;  (2) that Ujlaky failed to file or inform Pirkel that he needed to file a motion for an evidentiary hearing in state court within six months of conviction; (3) that Ujlaky failed to follow the requirements of *Anders* while withdrawing from representation; (4) that Ujlaky failed to file a brief drawing attention to anything that might arguably support Pirkel's appeal as required by *Anders*, attaching only letters exchanged between himself and Pirkel; (5) that Ujlaky could have raised a possible double jeopardy claim with respect to the assaults in No. 14669; (6) that Ujlaky failed to move to withdraw Pirkel's pleas within six months of the sentencing contrary to Standards 3 and 8 of the Michigan Supreme Court Administrative Order 2004-6; and, (7) that Ujlaky "caused Petitioner to default his [i]neffective assistance of trial counsel claims pursuant to MCR 6.310(c) because [p]etitioner did not find out about this deadline before it had passed." Order (ECF No. 29, PageID.144-145).

### c.    Issue III: Claims against the trial judge

Pirkel exhausted three claims: (1) that the trial judge allowed Attorney Ujlaky to withdraw without filing the proper brief; (2) that the trial judge did not have "an adequate basis for determining that counsel had performed his duty of carefully searching the record for arguable error"; and, that the trial judge violated Pirkel's 14th Amendment rights by adjudicating Attorney Ujlaky's deficient motion to withdraw.  Order (ECF No. 29, PageID.147-148).

## II.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before a habeas petitioner may seek such relief in federal court, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  As discussed, Pirkel has exhausted his state remedies with respect to the habeas claims addressed in this report.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011).  The AEDPA "imposes a

highly deferential standard for evaluating state-court rulings,  and  demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*,  559 U.S. 776, 773 (2010) (internal quotation marks and citations omitted).  This deferential standard "requires petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 562 U.S. at 103.  Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*,  562 U.S. at 101 (internal quotation marks omitted).

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id*.  A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.  Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.  "It bears repeating that even a strong case for relief

19

does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

### III.   Discussion

### A.   Legal standards applicable to Pirkel's plea

"It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). As discussed, Pirkel pled no contest or "*nolo contendere*" to the charges in No. 14669. Similar to a guilty plea, Pirkel's *nolo contendere* plea admits every essential element of the offense and constitutes a waiver of the non-jurisdictional defects and "any claims not logically inconsistent with the issue of factual guilt." *United States v. Freed*, 688 F.2d 24, 25-26 (6th Cir. 1982). *See People v. New*, 427 Mich. 482, 493; 398 N.W.2d 358 (1986) ("[s]ince a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea") (footnote omitted). It is well established that when a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry

of the guilty plea. *Tollett v. Henderson*, 411 U.S. 258 (1973). While a guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights, *see id.* at 267, such a plea does not bar claims that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974) or the validity of the plea itself, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (challenge to guilty plea on basis of ineffective assistance of counsel). Because Pirkel's claim does not challenge the power of the state to bring him into court, the only basis for challenging his conviction is to claim that his pleas are invalid.

The test for determining a guilty plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Alford*, 400 U.S. at 31 ("Strong evidence of guilt may suffice to sustain a conviction on an *Alford* plea, and may be essential under Fed. R. Crim. P. 11, but it is not necessary to comply with the Constitution.")

In order to enter a constitutionally valid guilty plea, the defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," *i.e.*, not be the product of "actual or

21

threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750. In other words, "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).

Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Thus, ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

**B.    Ineffective Assistance of Trial Counsel (Issue I)**

**1. Attorney Bush failed to ask any questions after Pirkel told Bush that he did not remember supplying parts of the "involuntary confession"**

**2. Attorney Bush did not inform petitioner that he could challenge the confession**

22

### 3.   Pirkel never understood his right to counsel while being interrogated

In  *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687.  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.  Under *Strickland*, the reviewing court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Id.* at 689-690.  "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Under the first prong of the *Strickland* test, the court considers whether counsel's performance was deficient.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  "In this regard, the court will 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *O'Hara v.  Wigginton*, 24 F.3d 823, 828 (6th Cir.  1994) (quoting *Strickland*, 466 U.S. at 689).

Under the second prong of the *Strickland* test, the court determines whether counsel's deficient performance was prejudicial.  "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693.  To establish prejudice in the guilty plea context, the

23

petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

As discussed, prior to taking the plea, the Judge Stutesman gave Pirkel time to meet with his attorney to review the police reports in No. 14669. Pirkel states that the first time he reviewed the reports was during the break in his plea hearing. According to Pirkel, there was an "involuntary confession" attached to the report, and when he told Attorney Bush that "I don't remember making those statements," his attorney's "only response was a glare." Memorandum (ECF No. 2, PageID.24).[3] There is no evidence to support Pirkel's claim that his plea was involuntary because Attorney Bush refused to respond to his questions regarding an involuntary confession. Even if this scenario occurred, Pirkel was sufficiently satisfied by Attorney Bush's advice because he agreed to proceed with the plea after reviewing the police reports.

Finally, the record reflects that the judge did not rely on Pirkel's confession as the factual basis for the *nolo contendere* plea:

> In terms of the no contest plea in file 07-14669, I was provided with a copy of the police reports that were prepared by the officers and I have gone through the police reports from all the officers involved, and have made notes on the side as to

---

[3] While Pirkel's memorandum referred to "exhibits 1-5" and "5-7", *see* Memorandum at PageID.24-25, these exhibits were not attached to the memorandum.

each count where they are found in the police reports, where the officers would provide a factual basis for each of the counts.

I can go through each of those at a time, if you'd like, or I can just admit the police report with my tabs, indicate that both counsel had an opportunity to review the police report, and would agree that if called, the officers testify according to their narrative reports, would establish that each of the elements contained in the information are met.

Plea Trans. (ECF No. 18 at p. 20).  Accordingly, this claim should be denied.

### 4.  Pirkel's "plea was not an intelligent act done with sufficient awareness of the relevant circumstances" because Bush did not give him "appropriate advice at a critical stage of the proceeding."

The gist of this claim is that Pirkel would have not taken the plea deal if he had known all of the relevant facts.  *See* Delayed Application (ECF No. 21 at p. 16).   As an initial matter, it is unclear as to the "relevant facts" to which Pirkel was not aware.  On appeal, Pirkel stated that he "reluctantly accepted" a plea deal which he now characterizes as "ridiculous." and "that he is not guilty of the most serious charges."   Delayed Application at p. 17. Similarly, in his memorandum, Pirkel stated that he "grudgingly accepted" the *nolo contendere* plea which seemed "preposterous" to him because: the two dropped charges could run consecutively with his sentence; "[f]ifteen serious felony charges in exchange for two did not seem like much of a deal";[4] that the sentencing guidelines under the plea deal did not include a cap and was "the same guideline range he would have received had he been convicted of all of the charges at a trial;" that there was no promise of leniency; and that "[a] rational person looking at the plea itself will infer that the defendant is guilty of the offenses in case no. 07-14668-FH and will look at or label him a sex

---

[4] As discussed, Pirkel did not plead guilty to 15 felonies; some of the charges were misdemeanors. In addition, the Court disagrees with Pirkel's suggestion that the dismissed felonies of second degree criminal sexual conduct and accosting a child for immoral purposes were not serious.

offender."   Memorandum at PageID.27-28.   While Pirkel now wants to take back his *nolo contendere* plea, he admits that he was aware of these facts when he "grudgingly accepted" the plea bargain.

Pirkel also stated in his delayed application that he believes it is relevant that the judge "did not believe Defendant was 'necessarily' guilty of attempted murder either," citing page 20 of the sentencing transcript.  Delayed application at p. 17.  It appears that Pirkel is referring to the judge's comment at sentencing that:

> In reading the reports, it -- it made sense to me, your behavior, when it came out that you were trying to get them to kill you and not intending to -- to kill them necessarily, although you shot in their direction.  As Mr. Fisher [the prosecutor] indicated, you did hide in the woods.
>
> So I don't know if you had moments, but at the same time you just waded in the river for them, you kept coming back out and then you'd -- the one description you had was that you put your head out of the water just so that they could only shoot you in the head and that would be the only spot to shoot you.
>
> What was amazing to me was just the  -- I guess the self control the officers had.  Somebody with a gun, somebody with a knife.  Nothing happened to you in the whole incident, other than maybe some bruises from being pulled into the boat and being handcuffed.
>
> But one officer had to have surgery because he fell chasing you.  The others -- one got cut, either by your knife or by the edge of the boat, yet, fortunately -- and you shot at them with the intent to -- to hit them so that they would shoot you.  It's just all very confusing and very troubling.
>
> The punishment has to fit both sides; both the protection of society and also rehabilitation for you.

Sent. Trans. (ECF No. 19 at pp. 19-20).  Contrary to Pirkel's contentions, the record reflects that he knew the relevant facts related to No. 14669 when he entered the plea.  As discussed, those facts were contained in the police reports which Pirkel reviewed during the plea hearing and which formed the basis for his *nolo contendere* plea.

Pirkel now claims that Attorney Bush provided ineffective assistance because he failed to advise Pirkel at the plea hearing that he had a defense to the charges of assault with intent to murder. Memorandum at PageID.15. As an initial matter, Pirkel presents no evidence of the substance of his discussions with Attorney Bush during the break in the plea hearing, let alone any evidence regarding a discussion of potential defenses to the charges. Nor has he explained how the defenses would have been successful had he gone to trial. It appears that Pirkel's claim arises from the judge's comments at sentencing that according to Pirkel's statement he shot the pistol at the officers, he was not "necessarily" intending to kill them. "The elements of the crime of assault with intent to murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Warren*, 200 Mich. App. 586, 588; 504 N.W.2d 907 (1993). Under Michigan law, "[c]ircumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of the offense." *Id.* Based on the record before the Court, it is undisputed that Pirkel shot at officers but did not hit them. The fact that Pirkel missed his targets is not a defense to attempted murder. For that reason alone, his claim should be denied.

Nevertheless, even if the Court assumes that Pirkel satisfied the performance prong of the *Strickland* test by establishing that Attorney Bush's performance was deficient, he failed to establish the prejudice prong of the test, i.e., that he would have not pled guilty and would have insisted on going to trial. Nothing in the record indicates that Pirkel would have scrapped the plea deal and insisted on going to trial on all 17 counts charged in the three criminal cases.

Based on this record, it appears to the Court that Pirkel's claim is in actuality one of buyer's remorse. Pirkel now claims that he "reluctantly" and "grudgingly" accepted a "ridiculous"

27

and "preposterous" plea deal.  As discussed, Pirkel's plea proceeding lasted over two hours.  *See* Plea Trans. (ECF No. 18).  Pirkel was informed of the plea agreement, informed of the rights he was waiving, and informed of the maximum penalties for his charged crimes.  No one objected to the judge's reliance on the police reports to support the plea *See* Plea Trans. at pp. 18-23.  The record reflects that Pirkel was aware of the relevant circumstances and the consequences of his plea, which included the possibility of spending the rest of his life in prison.

Pirkel has not met the *Strickland* standard for demonstrating that Attorney Bush provided ineffective assistance of counsel.  That fact that Pirkel now has "buyer's remorse" is not a basis to establish that the plea was involuntary.  Pirkel faced a tough decision and chose to plead *nolo contendere* to committing the criminal conduct on June 5, 2007 and June 16, 2007 in exchange for the dismissal of charges that he committed sexual misconduct against a minor and being branded as a sex offender.  As one court explained:

> "[I]t is well settled that post-sentencing 'buyer's remorse' is not a valid basis on which to dissolve a plea agreement and 'the fact that a defendant finds himself faced with a stiffer sentence than he had anticipated is not a fair and just reason for abandoning a guilty plea." *Moreno-Espada v. United States*, 666 F.3d 60, 67 (1st Cir. 2012) (quoting *United States v. Mercedes Mercedes*, 428 F.3d 355, 359 (1st Cir. 2005) (quoting *United States v. Torres-Rosa*, 209 F.3d 4, 9 (1st Cir. 2000)). Petitioner's "failure to receive the sentence he preferred does not make his plea involuntary when he knew that the sentence he received was a possible outcome of his plea." *Meek v. Bergh*, 526 F. App'x 530, 535 (6th Cir.2013), cert. denied, -- U.S. --, 134 S.Ct. 650, 187 L.Ed.2d 430 (2013).

*Lawrence v. Barrett*, No. 14-CV-11058, 2015 WL 870907 at *4 (E.D. Mich. Feb. 27, 2015).  For these reasons, Pirkel's claims that Attorney Bush provided ineffective assistance of counsel should be denied.

### C.    Ineffective assistance of appellate counsel Ujlaky (Issue II)

As discussed, Pirkel has alleged seven claims of alleged ineffective assistance of appellate counsel.  All of Pirkel's claims arise from Attorney Ujlaky's decision to withdraw under *Anders v. California*, 386 U.S. 738 (1967).  Four of Pirkel's claims contest manner in which Ujlaky withdrew under *Anders*, while three of his claims contend that he was prejudiced by that withdrawal.

### 1.    Pirkel's claims that Attorney Ujlaky improperly withdrew under *Anders*

Pirkel's has four related claims contesting Attorney Ujlaky's withdrawal:

**a.   Attorney Ujlaky failed to properly investigate and raise claims that could allow petitioner to withdraw his invalid plea.**

**b.   Attorney Ujlaky failed to follow the requirements of *Anders* while withdrawing from representation.**

**c.   Attorney Ujlaky failed to file a brief drawing attention to anything that might arguably support petitioner's appeal as required by *Anders*, attaching only letters exchanged between himself and petitioner.**

**d.   Attorney Ujlaky could have raised a possible double jeopardy claim with respect to the assaults in No. 14669**

Pirkel's claims of ineffective assistance of appellate counsel are measured under the *Strickland* standards.  Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance.  *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003), *citing Strickland*.  It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal.  *Smith v. Murray*, 477 U.S. 527, 536 (1986);  *Jones v. Barnes,* 463 U.S. 745 (1983).  On the contrary,

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52.  It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones."  *Id.* at 752, *quoting* R. Stern,

29

*Appellate Practice in the United States* 266 (1981).  "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention."  *Id.*

To evaluate a claim of ineffective assistance of appellate counsel, the court assesses the strength of the claim appellate counsel failed to raise.  *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008).  "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal."  *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).  If there is a reasonable probability that petitioner would have prevailed on appeal had the claim been raised, then this court can consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel."  *Id.* at 700.

As an initial matter, Pirkel cannot obtain federal habeas relief on the ground that Attorney Ujlaky did not "follow the requirements of *Anders* while withdrawing from representation."  This Court rejected a similar claim in *Lienemann v. Harry*, No. 1:14-cv-43, 2017 WL 822789 (W.D. Mich. March 2, 2017):

> Petitioner's argument that counsel did not withdraw in accordance with *Anders v. California* is not a basis for federal habeas corpus relief.  In *Anders v. California*, the Supreme Court held that a California procedure that permitted appellate counsel to withdraw on filing a conclusory letter that an appeal had "no merit" was inadequate.  386 U.S. at 742-44.  The Supreme Court stated: "[o]f course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should advise the court and request permission to withdraw."  *Id*. at 744.  The Court went on to sketch a procedure it would accept.  It indicated that appellate counsel's request to withdraw should "be accompanied by a brief referring to anything in the record that might arguably support the appeal."  *Id*.  A copy of this brief should be furnished to the defendant and time should be given to allow him to raise any points that he chooses.  *Id*.  The Supreme Court indicated that the court, and not counsel, should decide, after a full examination of all the proceedings, whether the case is wholly frivolous.  If the court makes such a finding, it may grant counsel's request to withdraw.  *Id*.
>
> More recently, in *Smith v. Robbins*, 528 U.S. 259 (2000), the Supreme Court held that the section of its *Anders* opinion that recited an acceptable procedure for treating frivolous appeals was not obligatory upon the States.  *Id*. at 265.  In so holding, the Supreme Court noted that the procedure delineated in *Anders* procedure was not an "independent constitutional command," but simply "a prophylactic framework" that the Supreme Court established as one method to vindicate the

constitutional right to appellate counsel.  *Id*. at 273 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)).  States are therefore "free to adopt different procedures, so long as those procedures adequately safeguard a defendant's right to appellate counsel."  *Id*. at 265.  The Supreme Court indicated that it would "evaluate state procedures one at a time" as they came before the Court, "while leaving the more challenging task of crafting appropriate procedures to the laboratory of the States in the first instance."  528 U.S. at 275.

The Supreme Court has never held that Michigan's procedure through which petitioner's appellate counsel was permitted to withdraw is deficient.  In the absence of a controlling holding of the United States Supreme Court, this court may not grant relief on a novel claim.  *See Premo v Moore*, 562 U.S. at 127 ("[N]ovelty alone–at least insofar as it renders the relevant rule less than 'clearly established'–provides a reason to reject it under AEDPA."); *see also Woods v. Donald*, 135 S. Ct. at 1377.

In addition, in *Smith v. Robbins*, the Supreme Court held that the proper standard for evaluating a habeas petitioner's claim that appellate counsel was ineffective for seeking to withdraw rather than filing a merits brief is the standard enunciated in *Strickland v. Washington*.  *Smith v. Robbins*, 528 U.S. at 285.  "[The petitioner] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal -- that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them.  If [the petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice.  That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal. *Smith v. Robbins*, 528 U.S. at 285-86.

*Lienemann*, 2017 WL 822789 at *10-11.  Accordingly, Pirkel's claim that Attorney Ujlaky failed to follow the procedure set forth in *Anders* should be denied.

Next, Pirkel's contention that Attorney Ujlaky failed to investigate and search out claims for appeal is without merit.  During the motion hearing, Ujlaky set out all of the matters he considered in evaluating Pirkel's appeal.  As discussed, Attorney Ujlaky stated that the record reflected a free and voluntary plea, that Pirkel was reluctant to go to trial on the sexual misconduct charges that were ultimately dismissed, and that Pirkel was found mentally capable to stand trial.  Motion Hearing (ECF No. 20 at pp. 10-11).  Attorney Ujlaky also stated: that he reviewed the transcripts; that he was in contact with Attorney Bush; that he went through the state court docket; that he met in person with Pirkel; that there was a waiver of rights and "no problem with respect to the plea taking"; that the sentencing was within the guidelines; and that he corresponded with Pirkel about matters including payment of restitution.  *Id*. at pp. 3-5.  Attorney Ujlaky further stated:

> If there was anything I could do for [sic] on behalf of Mr. Pirkel, either by way of attacking the plea, the plea agreement, or the sentencing, I would certainly do so.  But as an officer of the court, I'm not allowed to pursue frivolous issues despite how badly the client may want them raised.  If there's a total lack of merit as to any of those issues, I simply can't do that.  Maybe some other attorney might or could, but I certainly found nothing in this case that I could pursue on Mr. Pirkel's behalf.

*Id*. at p. 5.

During the motion hearing, the judge referenced two letters which he received from Pirkel complaining of Attorney Ujlaky's performance.  First, Pirkel complained that his trial counsel, Attorney Bush, was ineffective because: Pirkel did not receive a court hearing for his plea contrary to MCR 6.302(d)(2)(b); Attorney Bush "failed to show me the elements of the crimes charged, possible defenses, or any motions that could have been helpful, such as motions for discovery or suppression"; and posed the question, "How could I have knowingly made a plea if I didn't know the evidence against me?".  *Id*. at pp. 7-8.  In a second letter, Pirkel stated that Attorney Ujlaky: failed to cooperate with him; failed to give him proper recommendations; showed a reluctance to allow Pirkel time to research "any possible issues"; failed to give any helpful advice; and "didn't look hard enough" for issues, even though Pirkel "has found issues pertaining to but not limited to major errors in the plea proceeding."  *Id*. at p. 9.  Finally, Pirkel asked that Attorney Ujlaky be dismissed as his appellate counsel and that he be appointed new counsel.  *Id*. As discussed, the judge  rejected Pirkel's contention that Uljaky failed to represent him and allowed Ujlaky to withdraw.

While Pirkel contends that Attorney Ujlaky failed to raise "major errors" on appeal, the only issue that Pirkel has identified is a possible double jeopardy claim:

> There is a possible double jeopardy issue with counts 8 and 9 of Case file 07-14669-FC []Felonious Assault (MCL 750.82) and assaulting/resisting/obstructing causing injury (MCL 750.81d(2)[)].  Petitioner was prosecuted twice for substantially the same offense because he received two felonies that arose out of the same transaction.  Black's Law Dictionary, 7th Ed., pg. 506.

> The Trial Court questioned this issue on its own initiative, but Trial Counsel did not pursue the issue, as he may have been unprepared to do so.  Plea transcript pg. 21.  Even if this issue is not valid, Mr. Ujlaky could have used it in a brief to meet to meet the constitutional requirement of Anders.

Memorandum at PageID.34-35 (emphasis omitted).

It appears that Pirkel's claim is based upon the judge's comments at the plea hearing that:

> I have gone through the entire reports [sic] and each information and would make the finding that the elements are met by what's contained in the police reports to support each of the counts.
>
> The only question I had was counts eight and nine, assault with a dangerous weapon on Mr. Ives, and then count nine, assaulting, resisting, obstructing causing injury, Officer Yves, a police officer with the Sturgis Police Department.
>
> My only question is whether or not the elements in nine – you know, are the same as in eight.  But I would point out that nine, it requires that the person be a police officer and in eight it could be anyone.
>
> But there's grounds, obviously, for both, that when they tried to get Mr. Perkins [sic] out of the water, he had a knife.  He was swinging it wildly, and at one point Officer – or I'm sorry, not officer, but Deputy Chief Ives was cut on the hand.

Plea Trans. at p. 21.

Pirkel provides no legal basis for his claim that convictions for resisting and obstructing a police officer, M.C.L. § 750.81d(2), and felonious assault, M.C.L. § 750.82 violate the double jeopardy clause because they constitute two punishments for the same offense.  This bald assertion is not sufficient to establish that his appellate attorney was ineffective.  The fact that the judge noted, and then rejected, a potential overlap between Counts 8 and 9 did not require Attorney Ujlaky to raise this issue on appeal.  *See Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) ("appellate counsel need not raise every nonfrivolous argument on direct appeal").  For these reasons, Attorney Ujlaky's actions did not constitute ineffective assistance of appellate counsel.

### 2.    Pirkel was prejudiced by Attorney Ujlaky's withdrawal

Pirkel raised three claims of prejudice due to Attorney Ujlaky's withdrawal:

**a.  Attorney Ujlaky failed to file or inform petitioner that he needed to file a motion for an evidentiary hearing in state court within six months of conviction.**

**b.  Attorney Ujlaky failed to move to withdraw petitioner's pleas within six months of the sentencing contrary to Standards 3 and 8 of the Michigan Supreme Court Administrative Order 2004-6.**

33

### c. Attorney Ujlaky "caused Petitioner to default his [i]neffective assistance of trial counsel claims pursuant to MCR 6.310(c) because [p]etitioner did not find out about this deadline before it had passed."

In these claims, Pirkel contends that Attorney Ujlaky was ineffective for failing to advise him of the deadlines for filing a motion for an evidentiary hearing or to withdraw his plea. *See* MCR 6.310(C)(1) ("[t]he defendant may file a motion to withdraw the plea within 6 months after sentence or within the time provided by subrule (C)(2)").  Pirkel's claim is without merit.  As an initial matter, Pirkel moved to withdraw his plea before his sentencing, while he was still represented by Attorneys Bush and Kleidon. At that time, the judge considered his motion and denied it. *See* Sent. Trans. (ECF No. 19 at p. 7) ("I'm not going to allow you to withdraw your plea.").  Given this ruling, even if Attorney Ujlaky could bring a second motion to withdraw the plea, he had no duty to re-file this motion which had already been denied. Counsel cannot be ineffective for failing to raise meritless or futile objections.  *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"); *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999) ("[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument"); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[c]ounsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel");  *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press meritless issues before a court").

Furthermore, Pirkel suffered no prejudice because filing a motion to withdraw a plea does not implicate a federal constitutional right. Even if Attorney Ujlaky had filed a motion to withdraw the plea, and that motion had been denied, Pirkel's claim would not be cognizable on habeas corpus review because a state criminal defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).

The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas

court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991). Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state court rules is not cognizable on habeas corpus review.

*Barnes v. Michigan Department of Corrections*, No. 1:17-cv-265, 2018 WL 718570 at *7 (Jan. 18, 2018), R&R adopted 2018 WL 1524057 (W.D. Mich. March 28, 2018), cert. of appeal. denied, No. 18-1410, 2018 WL 4899100 (6th Cir. July 17, 2018).

Pirkel also contends that Attorney Ujlaky provided ineffective assistance because Ujlaky failed to comply with Standards 3 and 8 of the Michigan Supreme Court's Administrative Order 2004-6.  This administrative order sets the Court's minimum standards for indigent criminal appellate defense services.  Notably, the preamble to the administrative order explicitly points out that these standards are merely guidelines, that "[c]riminal appellants are not constitutionally entitled to counsel's adherence to these guidelines," and that counsel's failure to comply with any standard does not constitute a ground for ineffective assistance of counsel.[5] In short, Pirkel cannot base a claim of ineffective assistance of appellate counsel on an alleged violation of a Michigan Appellate Defender Commission standard.  Accordingly, this claim should also be denied.

## D.    Trial judge's errors (Issue III)

Pirkel contends that the trial judge erred by allowing Attorney Ujlaky to withdraw as his court-appointed appellate counsel.  As discussed, Pirkel has raised three issues:

---

[5] The preamble to AO No. 2004-6 (eff. Jan. 1, 2005) states:

The Michigan Legislature in MCL 780.712(5) requires the Appellate Defender Commission to develop minimum standards to which all criminal appellate defense services shall conform. Pursuant to this mandate, these standards are intended to serve as guidelines to help counsel achieve the goal of effective appellate and postjudgment representation. Criminal appellants are not constitutionally entitled to counsel's adherence to these guidelines. Hence, counsel's failure to comply with any standard does not of itself constitute grounds for either a claim of ineffective assistance of counsel or a violation of the Michigan Rules of Professional Conduct, and no failure to comply with one or more of these standards shall, unless it is independently a violation of a rule of professional conduct, serve as the basis for a request for investigation with the Attorney Grievance Commission.

**1. The trial court erred when it allowed Attorney Ujlaky to withdraw as appellate counsel without filing the proper brief.**

**2.  The trial court erred when it allowed Attorney Ujlaky to withdraw without an adequate basis for determining that counsel had performed his duty of carefully searching the record for arguable error**

**3.  The Court violated Pirkel's 14th Amendment rights by granting Attorney Ujlaky's deficient motion to withdraw as appellate counsel**

The gist of Pirkel's claim is that Attorney Ujlaky did not follow the requirements of *Anders* while seeking his withdrawal from representation, that the trial court erred in granting that motion, and that the court's actions violated his 14th Amendment rights.  The judge addressed Attorney Ujlaky's motion and Pirkel's letters opposing the motion at the hearing held on June 30, 2008.  *See* Hearing Trans. (ECF No. 20).  For the reasons discussed in § III.C., *supra*: the judge had adequate grounds to allow Ujlaky's withdrawal; Pirkel cannot obtain federal habeas relief on the basis that Ujlaky failed to follow the procedural requirements in *Anders*; and, to the extent that Pirkel contends that the judge deprived him of the ability to file a second motion to withdraw his guilty plea, such a contention is not cognizable on federal habeas review.  Accordingly, these claims of error should be denied.

## IV.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  January 17, 2019                             /s/ Ray Kent_____
                                                                      RAY KENT
                                                                      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to se rve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).